# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LAYLA B. ALY, | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 8:23-cv-01699-AAQ |
| JANET L. YELLEN, et al., | * | |
| Defendants | * | |

## MEMORANDUM OPINION AND ORDER

This is a case involving alleged national origin-based employment discrimination.  Plaintiff Layla Aly has advanced claims against her former employers, Defendants Janet Yellen and the United States Department of Treasury ("Defendants") under Title VII of the Civil Rights Act of 1964 and 42 U.S.C § 1981.  Pending before the Court is Defendants' Motion to Dismiss, or in the alternative, Motion for Partial Summary Judgment.  ECF No. 21.  The Motion has been fully briefed, and a hearing is not necessary under this Court's local rules.  *See* Loc. R. 105.6 (D. Md. 2016).  For the reasons discussed below, Defendants' Motion is granted, in part, and denied, in part.

## BACKGROUND

The following facts are set forth in Plaintiff Layla Aly's Complaint.[1]  ECF No. 1.  Ms. Aly, who was born in Egypt and immigrated to the United States in 1982, began working for the United States Department of Treasury as a Systems Accountant in the Bureau of Engraving and Printing in 2005.  *Id.* at ¶¶ 5–7.  In or around October of 2019, Ms. Aly transferred to a new division within

---

[1] When reviewing a motion to dismiss, the Court accepts all well-pled allegations as true.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994).

the Bureau of Engraving and Printing – the Financial Systems Division.  *Id.* at ¶ 8.  Before her transfer, Ms. Aly earned high employee performance ratings and had never required discipline from her employer.  *Id.* at ¶ 9.

Ms. Aly alleges that almost immediately after transferring to the new division, her supervisor, Tom Liebrand, treated Ms. Aly differently than other employees who were not foreign-born.  *Id.* at ¶ 10.  Mr. Liebrand allegedly ignored Ms. Aly's requests for help, instructed others not to assist Ms. Aly, and instructed Ms. Aly not to reach out to others for help with her new position, even though he provided help to other new or newly transferred employees.  *Id.* at ¶¶ 11–12.  Ms. Aly also alleges that Mr. Liebrand frequently yelled at her and erroneously criticized her job performance.  *Id.* at ¶ 14.  Ms. Aly further alleges that Mr. Liebrand sent her insulting and belittling emails, including one occasion on which he sent an email to Ms. Aly and all other employees in the division in which he told Ms. Aly that if she answered a question he asked her, he would grant her a reprieve from serving coffee to management.  *Id.* at ¶¶ 15–16.  Serving coffee to management was not one of Ms. Aly's job duties.  *Id.*

Between November 2019 and April 2020, on several occasions, Ms. Aly contacted Mr. Liebrand's manager, Tim Miller, to complain about Mr. Liebrand's actions.  *Id.* at ¶¶ 13–14, 17, 23–24.  In April 2020, Mr. Miller contacted his manager, Claire Chen, and on April 14, 2020, Ms. Aly, Mr. Miller, and Ms. Chen attended a meeting to discuss Mr. Liebrand's management of Ms. Aly.  *Id.* at ¶¶ 24–27.

In June 2020, Mr. Miller left his position, and Ms. Chen became Mr. Liebrand's acting supervisor.  *Id.* at ¶¶ 29–30.  Ms. Aly alleges that under Ms. Chen's supervision, Mr. Liebrand began treating Ms. Aly even worse, assigning Ms. Aly disproportionately more work than her American-born coworkers and expecting Ms. Aly to fulfill unreasonable deadlines.  *Id.* at ¶¶ 31–

32, 41.  Ms. Aly continued to complain to Ms. Chen about Mr. Liebrand's actions and, on June 25, 2020, asked Ms. Chen to transfer her to a different office with a different supervisor.  *Id.* at ¶¶ 33–34.  Ms. Chen denied Ms. Aly's request, although Ms. Aly alleges that Ms. Chen approved similar requests from American-born employees.  *Id.* at ¶ 35.  On or about June 28, 2020, Ms. Aly asked Ms. Chen to reconsider her decision or to provide help resolving the hostile work atmosphere Ms. Aly was experiencing under Mr. Liebrand's supervision.  *Id.* at ¶ 38.  Ms. Chen again refused Ms. Aly's transfer request and allegedly offered no other solutions to address Ms. Aly's grievances.  *Id.* at ¶ 39.  In response, on June 29, 2020, Ms. Aly contacted "an equal employment opportunity counselor" to file an internal complaint.  *Id.* at ¶ 40.  On June 30, 2020, Ms. Aly and Mike Mizzo, Ms. Aly's foreign-born colleague who had similar complaints about Mr. Liebrand's supervision, met with Ms. Chen to again voice concerns about their working conditions.  *Id.* at ¶¶ 42–43.  Ms. Aly alleges that during the meeting, Ms. Chen became visibly upset and told Ms. Aly and Mr. Mizzo that their work performances were deficient.  *Id.* at ¶ 44.  Ms. Aly further alleges that after the meeting, Ms. Chen refused Ms. Aly's leave requests, threatened to reduce Ms. Aly's pay grade, threatened to terminate Ms. Aly, and accused Ms. Aly of wrongdoing.  *Id.* at ¶¶ 47–49.

On July 6, 2020, Ms. Aly contacted the Department's Chief Financial Officer to report her concerns about Mr. Liebrand's and Ms. Chen's management.  *Id.* at ¶ 50.  On the same day, Ms. Aly filed an equal employment opportunity ("EEO") complaint against Ms. Chen.  *Id.*  On July 7, 2020, Ms. Chen allegedly informed Ms. Aly that she was not permitted to begin working prior to 6:00 AM, although one of Ms. Aly's colleagues worked during these hours.  *Id.* at ¶¶ 52–53.  On or about August 11, 2020, Ms. Chen held a meeting with Ms. Aly during which Ms. Chen again threatened to reduce Ms. Aly's pay grade or to terminate her.  *Id.* at ¶ 54.  On the same day, Ms. Chen issued Ms. Aly a Performance Improvement Plan ("PIP"), which required Ms. Aly to

complete a number of assignments within a 60-day window in addition to Ms. Aly's regular job duties. *Id.* at ¶ 55. Shortly after Ms. Chen placed Ms. Aly on the PIP, Mr. Liebrand began giving Ms. Aly assignments late into the evening with deadlines that Ms. Aly describes as "nearly impossible." *Id.* at ¶ 57.

Around this time, the Department placed Ms. Aly under the management of Sarah Benabdi, under whose management Ms. Aly alleges that she continued experiencing disparate treatment. *Id.* at ¶¶ 58, 60. In November 2020, Ms. Benabdi gave Ms. Aly the lowest performance rating that Ms. Aly had received during her employment with the Department of Treasury, 3.0 out of 5.0, even though Ms. Aly alleges that she continued to receive positive feedback from "coworkers and customers." *Id.* at ¶ 61. Ms. Aly alleges that Ms. Benabdi stated that others had instructed her to give Ms. Aly the low rating and negative comments. *Id.* at ¶ 62. In response, on November 4, 2020, Ms. Aly filed another EEO complaint and, shortly thereafter, was placed under the supervision of a new manager, Ty Hensel, under whom Ms. Aly alleges that her disparate treatment continued. *Id.* at ¶¶ 64–66, 82. In November 2021, Mr. Hensel gave Ms. Aly an annual performance review of 3.4 out of 5.0. *Id.* at ¶ 67. Also in November 2021, Mark Brody replaced Mr. Hensel as Ms. Aly's supervisor, under whom Ms. Aly alleges her negative treatment continued. *Id.* at ¶¶ 68, 70. Mr. Brody allegedly excluded Ms. Aly from meetings, called Ms. Aly outside of business hours, and assigned Ms. Aly a disproportionately large amount of work with unreasonable deadlines. *Id.* at ¶ 71. Mr. Liebrand, Ms. Benabdi, Mr. Hensel, and Mr. Brody all worked under the supervision of Ms. Chen. *Id.* at ¶¶ 24, 63, 65, 69.

Ms. Aly alleges that on November 16, 2021, she learned that the Department did not select her for an internal position for which she applied, the Systems Accountant position. *Id.* at ¶ 72. She also alleges that she applied for other positions in her office for which the hiring officials

selected her as an interview candidate but canceled her interview each time.  *Id.* at ¶ 74.  The Department never selected Ms. Aly for these positions.  *Id.*  On November 23, 2021, Ms. Aly filed another EEO complaint.  *Id.* at ¶ 73.

Ms. Aly alleges that her work environment caused her to suffer anxiety, stress, depression, insomnia, panic attacks, and hypertension.  *Id.* at ¶ 78.  To cope with these symptoms, Ms. Aly took leave from the end of November 2021 until January 2022.  *Id.* at ¶ 75.  She additionally took leave intermittently from January 2022 until June 30, 2022, at which point Ms. Aly alleges that she was forced to retire due to her employment conditions.  *Id.* at ¶¶ 76–77, 79.  Ms. Aly alleges that she sought medical care for the above symptoms and suffered damages in the forms of emotional distress and loss of wages and benefits.  *Id.* at ¶¶ 78, 81.

On January 24, 2023, Ms. Aly requested a final agency decision in response to the EEO complaints she filed throughout her employment.  *Id.* at ¶ 82.  Ms. Aly received the agency's final decision on March 24, 2023.  *Id.*  On June 22, 2023, Ms. Aly filed her Complaint in this Court, asserting against Defendants claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  *See id.*  On December 22, 2023, Defendants filed a Motion to Dismiss Ms. Aly's claims, or, in the alternative, for Partial Summary Judgment.  ECF No. 21.  On February 9, 2024, Ms. Aly filed a Response in Opposition to Defendants' Motion.  ECF No. 26.  On March 22, 2024, Defendants filed a Reply in support of their Motion.  ECF No. 29.

## LEGAL STANDARDS

Fed. R. Civ. P. 12(b) provides that a party may move to dismiss where the plaintiff has "fail[ed] to state a claim upon which relief can be granted."  When ruling on a motion to dismiss, the court considers whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court will consider whether the plaintiff has pled factual content allowing reasonable inferences to be drawn that the defendant is "liable for the misconduct alleged."  *Id.*  The plaintiff need not plead facts that are probable but must present facts showcasing more than a "sheer possibility" that the defendant's conduct is unlawful.  *Id.*  The plaintiff has an obligation to provide more than "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Pleadings that present "no more than conclusions" will not be "entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

Fed. R. Civ. P. 12(d) provides that "[i]f, on a Motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Rule 12(d) gives a court "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it, or simply not consider it."  *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012).  In determining whether to exercise its discretion to convert a motion to dismiss into one for summary judgment, a court should exercise "great caution" and consider whether conversion "is likely to facilitate the disposition of the action . . . [and] whether discovery prior to the utilization of the summary judgment procedure is necessary."  *Id.* (internal citations omitted).

The Court will grant a motion for summary judgment only where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there are factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the

Court must deny the request for summary judgment. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The party moving for summary judgment bears the burden of showing that there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de Fr. v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the nonmoving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998). "A party who bears the burden of proof on a particular claim must factually support each element of his or her claim." *Scott v. United States*, No. PJM-06-2777, 2007 WL 3020185, at *1 (D. Md. Feb. 23, 2007). Thus, on those issues on which the nonmoving party will bear the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256–57. "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *U.S. Equal Emp. Opportunity Comm'n v. Ecology Servs., Inc.*, 447 F. Supp. 3d 420, 437 (D. Md. 2020) (citing *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002)).

## ANALYSIS

Ms. Aly advances five claims in her Complaint. Under Title VII, Ms. Aly makes claims for national origin discrimination, retaliation, a hostile work environment, and constructive discharge. ECF No. 1. Ms. Aly additionally makes a claim for national origin discrimination

pursuant to 42 U.S.C. § 1981. *Id.* Defendants move to dismiss each of Ms. Aly's claims. ECF No. 21. Alternatively, Defendants argue that, to the extent Ms. Aly's claims are based on the Department of Treasury's decision not to select Ms. Aly for the internal positions for which she applied, and in the event that Ms. Aly's claims survive dismissal under the 12(b)(6) standard, Defendants are entitled to summary judgment. *Id.* at 6. The Court addresses each of Ms. Aly's claims in turn below.

## I.    Ms. Aly's Claims of National Origin Discrimination

Ms. Aly advances claims against Defendants for discrimination under both Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. ECF No. 1, at 10–12. The framework for assessing claims of employment discrimination brought under § 1981 "is the same as the framework applicable to a Title VII claim." *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 430 (D. Md. 2013) (citing *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004)). The Court will therefore consider Ms. Aly's Title VII and Section 1981 discrimination claims together.

Under these statutes, an employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). To prove a prima-facie claim of discrimination, a plaintiff must demonstrate: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). However, at the motion to dismiss stage, "a plaintiff need only 'offer facts that plausibly support inferences that'" the above elements are satisfied. *Campbell v. Beckton, Dickinson & Co.*, No. ELH-22-3043,

8

2024 WL 1299354, at *18 (D. Md. Mar. 27, 2024) (quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022)).   Defendants argue that Ms. Aly has failed to allege either an adverse employment action or that Defendants treated Ms. Aly differently than similarly situated employees outside of her protected class.   ECF No. 21, at 7–11.

### A.  Adverse Employment Action

"An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'"  *Holland v. Wa. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (alteration in original) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)).  "Examples of typical adverse employment actions are 'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion.'"  *Engler v. Harris Corp.*, No. GLR-11-3597, 2012 WL 3745710, at *7 (D. Md. Aug. 28, 2012) (quoting *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999)).  Poor performance reviews or reprimands generally do not constitute adverse employment actions, and "changes in assignments or work duties, even if unappealing to an employee, do not constitute . . . adverse employment action[s] unless the change is accompanied by a decrease in salary or work hours, or a similar significant detrimental effect."  *Id.* (citing *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598–99 (D. Md. 2011), *aff'd*, 465 Fed. App'x 274 (4th Cir. 2012); *Holland*, 487 F.3d at 219).

Ms. Aly alleges several actions that her employers took, which, she argues, collectively constitute an adverse employment action.  *See* ECF No. 1, at 2–10; ECF No. 26, at 8–9.  Ms. Aly alleges that her employer's adverse actions included: (1) ignoring Ms. Aly's requests for help; (2) burdening Ms. Aly with unreasonable deadlines, more work assignments, and higher expectations than her peers; (3) frequently reprimanding Ms. Aly for her work performance; (4) denying Ms. Aly's leave requests; (5) refusing Ms. Aly's requests to be transferred to a new supervisor; (5)

giving Ms. Aly poor performance reviews and placing her on a Performance Improvement Plan ("PIP"); (6) threatening a reduction in Ms. Aly's pay grade and threatening to terminate Ms. Aly's employment; (7) excluding Ms. Aly from meetings; and (8) failing to select Ms. Aly for internal positions for which she applied. *See* ECF No. 1. Defendants argue that, with the exception of Ms. Aly's non-selection allegation,[2] the actions she complains of are merely "petty annoyances" and "personality conflicts," which fall short of the adverse employment action standard. ECF No. 21, at 8–9.

Apart from Ms. Aly's non-selection claim, the actions she alleges do not amount to adverse employment action when considered individually or collectively. While Ms. Aly alleges that her managers burdened her with higher expectations and more assignments than her peers, "'[a]dditional duties' typically do not constitute adverse employment actions unless 'they are so weighty as effectively to change [the] basic terms of the employment.'" *Staggers v. Becerra*, No. ELH-21-231, 2021 WL 5989212, at *16 (D. Md. Dec. 17, 2021) (quoting *Vedula v. Azar*, No. TDC-18-386, 2020 WL 5500279, at *9 (D. Md. Sept. 11, 2020)). For additional work assignments to amount to adverse employment action, a plaintiff must explain how the workload "had a tangible effect on the terms and conditions of [their] employment . . . ." *Hemphill v. ARAMARK Corp.*,

---

[2] Defendants' Motion appears to concede that non-selection for a promotion is an adverse employment action. *See* ECF No. 21, at 9. To the extent Defendants do not concede this point, the Court notes that non-selection for a promotion is a well-accepted type of adverse employment action. *See, e.g.*, *Jones v. Md. Nat'l Cap. Park & Plan. Comm'n*, No. AW-99-3166, 2001 WL 38134, at *2 (D. Md. Jan. 5, 2001) (holding that the plaintiff established a prima facie case of employment discrimination where the plaintiff's alleged adverse employment action was the denial of advanced internal positions for which he applied); *Miller-Jones v. Prince George's Cmty. Coll.*, No. DKC-14-3517, 2016 WL 4141008, at *4 (D. Md. Aug. 4, 2016) (explaining the specific requirements for a discrimination claim based on non-selection). Because a non-selection claim has its own requirements, and Defendants have alternatively moved for summary judgment on Ms. Aly's non-selection claim, the Court will limit its analysis here to whether Ms. Aly's other allegations constitute adverse employment actions.

No. ELH-12-1584, 2014 WL 1248296, at *11 (D. Md. Mar. 25, 2014).  *See also Johnson v. Aluminum Co. of Am.*, 397 F. Supp. 2d 688, 697 (M.D.N.C. 2005) (holding that more work assignments did not constitute adverse employment action where the plaintiff did "not explain how this extra work altered the 'terms, conditions, or benefits' of his employment").  Here, Ms. Aly has not alleged facts that show how her workload effectively changed the terms of her employment, such as through a decrease in salary or increase in work hours.

Similarly, Ms. Aly's various allegations involving Defendants' criticism of her work performance do not amount to an adverse employment action.  Ms. Aly's Complaint alleges that Defendants gave her increasingly poor performance reviews, ECF No. 1, at ¶¶ 44, 61, 67; but, as noted, "[a] poor performance review or reprimand is generally not considered an adverse employment action." *Engler*, 2012 WL 3745710, at *7.  "[A] poor performance evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Dortch v. Cellco P'ship*, 770 F. App'x 643, 647 (4th Cir. 2019) (quoting *James*, 368 F.3d at 377).  Ms. Aly has not identified any consequences of her performance evaluations apart from being transferred to the supervision of new managers.  ECF No. 1, at ¶¶ 65, 68.  This change, which did not affect Ms. Aly's hours, her pay, or her job duties, did not detrimentally alter the terms of her employment.  *See, e.g.*, *Dortch*, 770 F. App'x at 647 (finding that working a less desirable shift as a result of the plaintiff's low performance rating did not detrimentally alter the terms of the plaintiff's employment); *Charlot v. Donley*, No. 11-579-MBS, 2014 WL 1319182, at *14 (D.S.C. Mar. 31, 2014) (noting that "[c]ourts have held that transfer or denial of a request to transfer to a new supervisor is not an adverse action," and finding that, in the retaliation context, the plaintiff's transfer to a new supervisor was not an adverse action).  Ms. Aly also alleges that Defendants placed her on a PIP, ECF No. 1, at ¶

11

55, but this, too, fails to amount to an adverse employment action for the purposes of a discrimination claim. Like poor performance reviews, placement on a PIP constitutes an adverse employment action for the purposes of a discrimination claim only where it results in detrimental changes to the plaintiff's terms of employment. *Jensen-Graf v. Chesapeake Emps.' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) (holding that the plaintiff failed to state a plausible discrimination claim based on her placement on a PIP because "[s]he has failed to allege that she received lower pay, was demoted, was passed over for a promotion, failed to receive a bonus, or [was] given significantly different responsibilities because she was placed on the PIP"); *Overton v. Lash Grp.*, No. 22-2903-MGL-TER, 2023 WL 4769625, at *3 (D.S.C. July 11, 2023) (noting that "[f]or the purposes of a Title VII discrimination claim, . . . placement on a PIP is not sufficient to state an adverse employment action where the PIP was not accompanied by a significant change in employment status" and collecting cases). Ms. Aly alleges only that the PIP required her to complete assignments additional to her regular job duties within a deadline. ECF No. 1, at ¶ 55. As noted, additional assignments and unreasonable deadlines do not alter the terms or conditions of employment absent further allegations.

Finally, Ms. Aly's additional, miscellaneous, complaints about her workplace do not amount to adverse employment actions. Ms. Aly contends that her supervisor ignored her requests for help and instructed others not to help her, although he provided help to other employees. ECF No. 1, at ¶¶ 11–12, 51. This falls short of an adverse employment action. *See Pate v. Med. Diagnostic Lab'ys, LLC*, No. 19-126-FL, 2021 WL 965906, at *14 (E.D.N.C. Mar. 15, 2021) (holding that where a supervisor failed to give the plaintiff "hands-on help as the other [employees] were receiving," there was no actionable adverse employment action). Ms. Aly also alleges that her employers denied her leave requests, ECF No. 1, at ¶¶ 47–49, but this, too, fails to constitute

an adverse employment action.  *Tafazzoli v. Nuclear Regul. Comm'n*, Nos. PWG-19-321, PWG-19-1638, 2020 WL 7027456, at *13 (D. Md. Nov. 30, 2020) (holding that the plaintiff did not plausibly allege an adverse employment action where she alleged, among other grievances, that her employer denied her leave requests); *Dailey v. Lew*, No. GLR-15-2527, 2016 WL 1558150, at *5–6 (D. Md. Apr. 18, 2016) (collecting cases and finding that placement on a leave restriction plan was not an adverse employment action).  Next, Ms. Aly complains that Defendants did not permit her to start work prior to 6:00 A.M. but allowed one of her coworkers to do so.  ECF No. 1, at ¶ 52–53.  While reduction of an employee's working hours alters the terms and conditions of employment, working an undesirable schedule generally does not.  *See, e.g.*, *Phillips v. Dukes*, No. PWG-17-1581, 2018 WL 835709, at *5 (D. Md. Feb. 12, 2018) ("A change in work schedule to less favorable hours is not typically an adverse employment action").  While this Court has recognized that an employee's change in schedule could be adverse "when accompanied by additional allegations as to the impact of the schedule change," such as in the case of a mother with school-age children, *id.*, Ms. Aly has not alleged how her inability to work before 6:00 AM detrimentally impacted the terms of her employment.  Ms. Aly also alleges that her supervisor excluded her from certain meetings.  ECF No. 1 at ¶ 71.  In the absence of "tangible effects" on a plaintiff's employment that result from exclusion from meetings, such as missing out on opportunities for networking and promotions, such exclusion "does not rise to the level of an adverse action."  *Kelly v. Boeing Co.*, No. 16-cv-196, 2016 WL 7217661, at *3 (E.D. Va. Dec. 12, 2016) (citing *James*, 368 F.3d at 377).  Ms. Aly has not alleged what type of meetings her employer excluded her from, how frequently, or how the exclusion impacted her professional opportunities.  Thus, she has not plausibly alleged that her exclusion from meetings affected the terms, conditions, or benefits of her employment.  Finally, Ms. Aly alleges that Defendants threatened both

termination and a decrease in Ms. Aly's pay grade.  ECF No. 1 at ¶¶ 49, 54.  "In general, the mere threat of discipline is not an adverse action unless it actually leads to alterations in the terms and conditions of employment."  *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 740 (D. Md. 2023).  Because Ms. Aly does not allege that Defendants' threats to terminate her or reduce her pay grade resulted in any alteration to the terms of her employment, it does not rise to the level of an adverse employment action for purposes of her discrimination claim.  *See Harris v. Esper*, No. JKB-18-3562, 2019 WL 5423768, at *6 (D. Md. Oct. 23, 2019) ("While courts in this circuit have recognized threatened termination as adverse action in the context of retaliation claims, the standard for adverse employment action in discrimination claims is significantly more rigorous").

Ms. Aly argues that, while individually the actions she alleges may not constitute adverse employment actions, collectively, they do.  ECF No. 26, at 8–9.  Defendants argue that the court may not consider the cumulative effect of a plaintiff's allegations in the context of a discrimination claim.  ECF No. 29, at 6–7.  The Court agrees with Defendants that courts typically consider alleged adverse employment actions on their own, rather than the circumstances as a whole, in the discrimination context.  *See, e.g.*, *Staggers*, 2021 WL 5989212, at *15–19 (addressing each alleged adverse employment action one by one); *Hemphill*, 2014 WL 1248296, at *11–12 (same).  *But see Tafazzoli*, 2020 WL 7027456, at *13 (finding that the plaintiff had not alleged an adverse employment action for her discrimination claim because she "has not alleged how [several] actions, either alone or collectively, had a significant detrimental effect on her employment").  Nonetheless, this Court has noted that a hostile work environment, which "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" is an adverse employment action for the purposes of a discrimination claim.  *Leonard v. Towson Univ.*, No. GLR-21-1464, 2022 WL 3867949, at *10 (D. Md. Aug. 30, 2022) (quoting *National R.R.*

14

*Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).  In such a case, the court may consider the totality of the circumstances to decide if there has been an adverse employment action, but the discrimination claim is "wholly subsumed into" the hostile work environment claim.  *Id.* Accordingly, none of the actions that Ms. Aly alleges, outside of non-selection, alone constitute an adverse employment action.  To the extent that they may cumulatively amount to a hostile work environment, the Court addresses such below in its analysis of Ms. Aly's hostile work environment claim.

Accordingly, Ms. Aly's allegation that Defendants failed to select her for internal promotions for which she applied is the only adverse employment action that can support her discrimination claims.  If Ms. Aly's non-selection claim fails, her discrimination claims cannot survive Defendants' Motion.

**B.  Non-selection claim**

A discrimination claim based on non-selection for a position has its own requirements. *See, e.g.*, *Battle v. Burwell*, No. PWG-14-2250, 2016 WL 4993294, at *10 (D. Md. Sept. 19, 2016); *Equal Emp. Opportunity Comm'n v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001).  To prove a claim for discrimination based on non-selection for a position, a plaintiff must demonstrate that "(i) [she] belongs to a protected class; (ii) [she] applied and was qualified for a job for which the employer was seeking applicants, [and] (iii) despite [her] qualifications, [she] was rejected . . . ." *Sears Roebuck & Co.*, 243 F.3d at 851.  Additionally, a plaintiff must allege that her rejection occurred "under circumstances giving rise to an inference of unlawful discrimination." *Miller-Jones*, 2016 WL 4141008, at *4.  Plaintiffs typically satisfy the last requirement by showing "that the position was filled by a similarly qualified applicant outside the protected class." *Id.* (citing *Miles v. Dell, Inc.*, 429 F.3d 480, 485–87 (4th Cir. 2005)).  Moreover, plaintiffs may also satisfy

the final requirement "by showing that the position in question remained open and was unfilled." *Id.* (citing *Miles*, 429 F.3d at 485).  Additionally, a plaintiff can satisfy the final requirement where "a significant lapse of time occurs between the [non-selection] and the decision to hire another person, . . . [or where] the employer's hiring of another person within the protected class is calculated to disguise the act of discrimination."  *Id.* (citing *Miles*, 429 F.3d at 486).  As previously noted, to survive a motion to dismiss, a plaintiff is not required to establish a *prima facie* case, but they must plead factual allegations sufficient "to raise a right to relief above the speculative level." *Coleman*, 626 F.3d at 190 (quoting *Twombly*, 550 U.S. at 555). [3]

According to the Complaint, Ms. Aly is a member of a protected class, and the Department did not select her for the Systems Accountant Position, as well as "other positions in her office" to which she applied.  ECF No. 1, at ¶¶ 5, 72, 74.  Additionally, Ms. Aly alleges in her Complaint that she received interview opportunities for some of the positions to which she applied, *id.* at ¶ 74, allowing the Court to plausibly infer that Ms. Aly was qualified for the positions.  However,

---

[3] In addition to arguing that Ms. Aly has not alleged the above elements of a non-selection claim, Defendants argue that Ms. Aly has not alleged sufficient facts to show that the positions for which she applied were promotions, rather than lateral transfers.  ECF No. 21, at 10–11.  Indeed, "rules regarding transfers appl[y] with equal force to the denial of transfer requests," *Wagstaff v. City of Durham*, 233 F. Supp. 2d 739, 745 (M.D.N.C. 2002), *aff'd*, 70 F. App'x 725 (4th Cir. 2003), and a "purely lateral transfer does not constitute an adverse employment action."  *Nichols v. Comcast Cablevision of Md.*, 84 F. Supp. 2d 642, 654 (D. Md. 2000).  Nonetheless, courts have recognized various circumstances in which lateral transfers can constitute adverse employment actions because "they have a . . . 'detrimental effect' on [the plaintiff's] opportunities for promotion or professional development."  *Maine v. Azar*, No. GLR-16-3788, 2021 WL 3617215, at *13 (D. Md. Aug. 16, 2021) (quoting *James*, 368 F.3d at 376 and collecting cases).  In fact, the United States Supreme Court, in a recent decision, held that, in the context of a Title VII discrimination claim based on a transfer, the 'detrimental effects' a plaintiff experiences as a result of the transfer need not be "significant . . . serious, . . . substantial, or any similar adjective."  *Muldrow v. City of St. Louis, Mo.*, 144 S. Ct. 967, 974–75 (Apr. 17, 2024).  Accordingly, the Court assumes, *arguendo*, that that the positions for which Ms. Aly applied were promotions, rather than lateral transfers, but notes that their being lateral transfers would not preclude Ms. Aly from alleging facts sufficient to sustain a non-selection claim.

16

Ms. Aly's Complaint is devoid of factual allegations suggesting that Defendants rejected her from the positions under the circumstances courts have held give rise to an inference of unlawful discrimination.  Ms. Aly's Complaint fails to allege either that the positions to which she applied were ultimately filled by similarly qualified candidates outside of Ms. Aly's protected class or that the positions in question remained open and unfilled.  Nor does Ms. Aly allege that Defendants filled the positions after a significant lapse of time or that Defendants hired individuals in Ms. Aly's protected class to disguise their acts of discrimination.  Thus, the Court cannot plausibly infer that Ms. Aly's rejection from these positions occurred due to unlawful discrimination.

In an affidavit attached to her Response in Opposition to Defendants' Motion to Dismiss, Ms. Aly asserts that the Department of Treasury's HR Department opened and canceled the Systems Accountant position multiple times.  ECF No. 26-1, at ¶¶ 36–41.  While it is possible that the assertions in Ms. Aly's affidavit could give rise to an inference of unlawful discrimination, "the Court cannot consider 'essential elements of the claim that were not initially pled.'"[4]  *Smith v. Verizon Wash., D.C.*, No. PJM-11-1301, 2011 WL 5547996, at *5 (D. Md. Nov. 10, 2011) (quoting *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).  Nonetheless the Court will allow Ms. Aly an opportunity to file an Amended Complaint in which she may set forth specific allegations to support her discrimination claims.  Accordingly, the Court will dismiss Counts I and II of Ms. Aly's Complaint, without prejudice, with leave to amend.

## II.    Ms. Aly's Retaliation Claim

---

[4] Although Defendants have moved, in the alternative, for summary judgment on the issue of non-selection, which would allow the Court to consider Ms. Aly's affidavit, Defendants have asked that the Court convert their Motion to one for summary judgment only in the event that Ms. Aly's non-selection claim survives under the motion to dismiss standard.  ECF No. 21, at 10–11; ECF No. 29, at 5, n. 2.  Because Ms. Aly's claims fail under the motion to dismiss standard, the Court need not determine whether to convert Defendants' Motion and consider Ms. Aly's affidavit, nor whether Ms. Aly's non-selection claim could survive under the summary judgment standard.

Ms. Aly additionally advances a retaliation claim against Defendants under Title VII of the Civil Rights Act of 1964.  ECF No. 1, at 12–13.  Title VII "bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding."  *Staggers*, 2021 WL 5989212, at *12 (citing 42 U.S.C. § 2000e-3).  To prevail on a retaliation claim, a "plaintiff must show (1) that she engaged in a protected activity, (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events."  *Laurent-Workman*, 54 F.4th at 212 (citing *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016)).  To survive Defendants' Motion, Ms. Aly must allege facts sufficient to support a plausible inference that the above elements are met.  Defendants argue that Ms. Aly has failed to allege that she suffered an adverse employment action and that, even if she did, she has failed to allege a causal link between the protected activity and the adverse employment action.  ECF No. 21, at 11–13.  The court addresses each argument in turn.

### A.  Adverse Employment Action

Defendants argue that Ms. Aly has failed to state a claim for retaliation because she has not alleged an adverse employment action.  ECF No. 21, at 11.  What qualifies as an adverse employment action in the retaliation context is less onerous than in the discrimination context. *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).  In the retaliation context, a plaintiff need only show that the action was "materially adverse," meaning the action "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Id.* (quoting *Rochon v. Gonzalez*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  To support a retaliation claim, an action need not "alter the terms or conditions of employment" to be materially adverse. *Emami v. Bolden*, 241 F. Supp. 3d 673, 684–85 (E.D. Va. 2017) (citing *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 830–31 (E.D. Va. 2016)); *Gatewood v. Off. of Comptroller of Md.*, No. 22-

437-AAQ, 2022 WL 11183326, at *4 (D. Md. Oct. 19, 2022) (citing *Burlington Northern*, 548 U.S. at 64).

Ms. Aly has sufficiently alleged that her placement on a PIP constituted a materially adverse action.  ECF No. 1, at ¶ 55.  While Ms. Aly's placement on a PIP was insufficient to allege an adverse employment action for her discrimination claim, placement on a PIP may suffice to allege an adverse employment action under the lower retaliation standard.  *See*, *e.g.*, *Leckie v. Bd. of Educ. of Montgomery Cnty.*, No. TDC-23-299, 2023 WL 8809310, at *8 (D. Md. Dec. 19, 2023) (finding that the plaintiff plausibly alleged an adverse employment action for her retaliation claim based on her placement on a PIP);[5] *Hanson-Hodge v. Kijakazi*, No. 22-2818-BAH, 2023 WL 8357322, at *12 (D. Md. Dec. 1, 2023) (finding that the plaintiff plausibly alleged a materially adverse action based on her placement on a Performance Assistance ("PA") plan and an Opportunity to Perform Successfully ("OPS") plan); *Lazarte v. Montgomery Cnty. Pub. Schs.*, No. DLB-20-1515, 2021 WL 5770281, at *8 (D. Md. Dec. 6, 2021) (assuming, for the purposes of a motion to dismiss, that placement on a PIP is an adverse action in the retaliation context).

"[T]he Fourth Circuit has not categorically held that a negative performance plan or placement on a PIP constitutes, or fails to constitute, a materially adverse action."  *Emami*, 241 F. Supp. 3d at 685.  Judges in this Court, however, have endorsed the view that "a PIP standing alone does not constitute [a materially adverse] action . . . [but] it could so qualify with additional facts and circumstances."  *Leckie*, 2023 WL 8809310, at *8.  For example, placement on a PIP "may be an adverse action if it includes language suggesting a plaintiff may be at risk of 'further discipline,

---

[5] *Leckie* evaluates a retaliation claim under the Rehabilitation Act, however, such claims are assessed under the same standard as Title VII retaliation claims.  *See*, *e.g.*, *Condillac v. Califf*, No. DKC-20-1794, 2023 WL 2139794, at *3, n.6 (D. Md. Feb. 21, 2023) ("The 'adverse action' standards for Rehabilitation Act discrimination and retaliation claims mirror the standards for Title VII discrimination and retaliation claims").

including termination.'" *Gatewood*, 2022 WL 11183326, at *4 (quoting *Staggers*, 2021 WL 5989212, at *9).  Likewise, placement on a PIP may be materially adverse "if it has an adverse effect on the employee's pay or opportunities for advancement."  *Id.* (citing *Lewis v. Forest Pharms., Inc.*, 217 F. Supp. 2d 638, 648 (D. Md. 2002)).  Alternatively, placement on a PIP accompanied by other allegations that, alone, may not be materially adverse actions but that "place in context the PIP and its possible chilling effect" can, in combination, constitute a materially adverse action. *Leckie*, 2023 wl 8809310, at *8.  *See also*, *Hanson-Hodge*, 2023 WL 8357322, at *11–12 (finding that enrollment in PA and OPS plans was sufficient to allege an adverse action because the plaintiff alleged facts about the consequences of placement on the plans such that it would deter a reasonable employee from making or supporting a charge of discrimination).

Here, Ms. Aly has sufficiently alleged facts that provide context to her placement on the PIP and allow for a reasonable inference that such placement was sufficient to dissuade a reasonable person from engaging in a Title VII protected activity.  At the time Defendants placed Ms. Aly on her PIP, or shortly thereafter, Ms. Aly alleges that Defendants threatened to reduce her pay or to terminate her, assigned her a disproportionate workload with unreasonable deadlines, and excluded her from meetings.  ECF No. 1, at ¶¶ 54–55, 57, 61, 67, 71.  Each of these allegations, even if not materially adverse actions in and of themselves, demonstrate the chilling effect that Ms. Aly's placement on the PIP may have had.  *See, e.g.*, *Marley v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, No. GJH-17-1902, 2018 WL 4509900, at *7 (D. Md. Sept. 20, 2018) (stating that "the threat of termination would plainly dissuade a reasonable worker from filing a similar EEO complaint" and finding that, between being placed on a PIP and receiving a threat of termination, the plaintiff sufficiently alleged a materially adverse action); *Staggers*, 2021 WL 5989212, at *23–24 (noting that receiving excessive assignments that were more time consuming

and arduous "might dissuade a reasonable worker from engaging in protected activity"); *Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 629–30 (D. Md. 2013) (holding that where, among other grievances, the plaintiff received more work than her coworkers, the plaintiff sufficiently alleged an adverse employment action for her retaliation claim); *Leckie*, 2023 WL 8809310, at *8 (noting that the plaintiff's exclusion from meetings was a chilling effect that supported the plaintiff's allegation that placement on a PIP was a materially adverse action). Drawing all inferences in favor of Ms. Aly, as required at this stage, the Court concludes that she has sufficiently alleged that the PIP and its surrounding circumstances may have dissuaded a reasonable employee from making a charge of discrimination.

### B. Causation

Defendants next argue that Ms. Aly has failed to state a claim for Title VII retaliation because she has failed to allege a causal link between her engagement in a protected activity, that is, filing EEO complaints, and her employer's materially adverse action. ECF No. 21, at 11–13. The causal link element of a retaliation claim requires that the employer took the "adverse action *because* the plaintiff engaged in the protected activity." *Lowman v. Md. Aviation Admin.*, No. JKB-18-1146, 2019 WL 133267, at *8 (D. Md. Jan. 8, 2019) (emphasis in original) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). "[A]t the prima facie stage—and, even more so, at the motion to dismiss stage—establishing causation "is not an onerous burden." *Id.* (quoting *Strothers v. Laurel*, 895 F.3d 317, 335 (4th Cir. 2018)). An inference of a causal connection exists where the employer takes the adverse action "'shortly after' learning about the protected activity." *Cepada v. Bd. of Educ. of Balt. Cnty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011) (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013)). Such a

"temporal relationship between the protected activity and the alleged adverse action can be sufficient to establish a causal connection at the pleading stage." *Arsenault v. Dep't of Pub. Safety & Corr. Servs.*, No. RDB-20-998, 2020 WL 7694472 (D. Md. Dec. 28, 2020) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

In this case, Defendants placed Ms. Aly on the PIP approximately six weeks after she filed her first EEO complaint reporting alleged discrimination and five weeks after she filed her second EEO complaint that alleged retaliation. ECF No. 1, at ¶¶ 40, 50, 55. Five to six weeks is a sufficiently short enough time to allege a causal link through temporal proximity. While "[t]here is no bright-line rule for how close in time a grievance and an adverse action must be to establish a causal connection," *Gatewood*, 2022 WL 11183326, at *6, courts in the Fourth Circuit have found that similar amounts of time were sufficient to allege a causal connection. *See, e.g.*, *Staggers*, 2021 WL 5989212, at *25 (holding that a seven-week lapse between the protected activity and the adverse action was sufficiently short to allege a causal link through temporal proximity); *Vicino v. Maryland*, 982 F. Supp. 2d 601, 614 (D. Md. 2013) (holding that a less than two-month gap between the plaintiff's protected activity and termination was sufficiently short to satisfy the requisite causal link); *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 588 (D. Md. 2012) (same); *Alexander v. Bloomingdale's, Inc.*, No. PWG-17-3283, 2019 WL 2162286, *13 (D. Md. May 17, 2019) ("This Court and the Fourth Circuit have held that approximately two months may be sufficient temporal proximity to establish a causal relationship"). *But see Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) ("[T]his court has previously noted that a lapse of two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation.'") (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003)). Here, the lapse

in time between Ms. Aly's protected activity and the adverse employment action was less than two months.  Drawing all inferences in favor of Ms. Aly, this length of time is short enough to allege a causal connection.

Defendants argue that Ms. Aly cannot establish the requisite causal nexus because Defendants' poor treatment of Ms. Aly began before she filed any complaints with the EEO.  ECF No. 29, at 7–8.  While Ms. Aly has alleged that her workplace issues began before she filed her EEO complaints, the particular materially adverse employment action she experienced, namely Defendants' placement of Ms. Aly on the PIP, occurred after Ms. Aly filed her complaints.  Thus, Defendants' argument that a causal nexus cannot be established when the adverse action predates the plaintiff's protected activity is inapplicable in this case.[6]  Accordingly, Ms. Aly has sufficiently alleged both a materially adverse action and the requisite causal link for her Title VII retaliation claim.  The Court will deny Defendants' Motion as to Ms. Aly's retaliation claim.

## III.   Ms. Aly's Hostile Work Environment Claim

Ms. Aly next asserts a hostile work environment claim against Defendants.  ECF No. 1, at 13–14.  A hostile work environment exists, in violation of Title VII, "[w]hen the workplace is

---

[6] In support of this argument, Defendants primarily rely on the Fourth Circuit's decision in *Minnick v. County of Currituck*.  ECF No. 29, at 8 (citing *Minnick*, 521 Fed.Appx. 255, 264 (4th Cir. May 29, 2013)).  *Minnick* is distinguishable as the court's decision was primarily an evidentiary one regarding the nature of the changes and defendants' motivation for them, as opposed to one based on the specific timing of the plaintiffs' allegations in the complaint.  *See Minnick*, 521 Fed.Appx. at 264 ("Minnick also asserted, however, that he was 'excited' about the Corolla transfer and felt that 'the move to Corolla was for the best.'  In sum, the Corolla transfer is Minnick's first suggestion of a retaliatory or discriminatory employment action, and its purportedly adverse nature is refuted by Minnick's own testimony."); *id.* ("The termination followed four discrete incident reports and disciplinary actions against Minnick at Knott's Island for violations of station and County policy.  Notably, the final decision to terminate Minnick was recommended by Chief Carter and accepted by Manager Scanlon, who explained that it was brought about by Minnick's repeated infractions and numerous complaints about his attitude toward volunteer firefighters.").

permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (alteration in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To prove a claim for a hostile work environment under Title VII, the plaintiff must demonstrate that "(1) the harassment was unwelcome; (2) the harassment was based on [the plaintiff's protected class]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (citing *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997)). To survive a motion to dismiss, a plaintiff must plead sufficient factual allegations that, accepted as true, allow the court to draw reasonable inferences that the above elements are satisfied. *Laurent-Workman*, 54 F.4th at 210. Defendants do not dispute that Ms. Aly's allegations satisfy the first and fourth elements but argue that Ms. Aly has not sufficiently alleged that the harassment she experienced was based on her protected class, nor that it was severe or pervasive. ECF No. 21, at 13–16. The Court addresses each argument in turn.

### A. Harassment Based on Protected Class

"To satisfy the second element of a hostile work environment claim, the plaintiff must demonstrate that" her employer "harassed or otherwise discriminated against [her] 'because of' her protected class." *Grady v. McCarthy*, No. ELH-17-1141, 2018 WL 3105769, at *22 (D. Md. June 22, 2018) (citing *Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000)). A plaintiff may satisfy this requirement "by showing that 'but for' her protected class, she would not have suffered discrimination." *Id.* (citing *Smith*, 202 F.3d at 242).

24

Conclusory statements that an employer treated a plaintiff differently because of their protected class "and 'general statements of dissimilar treatment' are insufficient to show" that the discrimination occurred because of the plaintiff's protected class. *Winston v. Maryland*, No. PWG-17-2477, 2018 WL 5786130, at *8 (D. Md. Nov. 5, 2018) (quoting *Gilliam v. S.C. Dep't of Juv. Just.*, 474 F.3d 134, 142 (4th Cir. 2007)). *See also Causey*, 162 F.3d at 801–02 ("conclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment"). By contrast, where a plaintiff identifies specific instances of dissimilar treatment from their employer compared with colleagues outside of their protected class, the court may draw the plausible inference that the harassment was motivated by the plaintiff's status in a protected class, provided there is no other obvious explanation for the disparate treatment. *See Winston*, 2018 WL 5786130, at *8 (denying a motion to dismiss hostile work environment claim where the plaintiff "has done more than [present conclusory statements], identifying multiple specific instances of dissimilar treatment compared with various" colleagues outside of her protected class); *Lee v. Mattis*, No. PX-17-2836, 2018 WL 3439261, at *10 (D. Md. July 17, 2018) (finding that specific allegations of dissimilar treatment compared with colleagues outside the plaintiff's protected class "support[ed] a reasonable inference that [the employer's] treatment of [the plaintiff] was racially motivated"); *Phillips v. WakeMed*, No. 20-cv-626-M, 2021 WL 4891741, at *11 (E.D.N.C. Oct. 19, 2021) (stating that the court "cannot plausibly infer that [the defendant's] actions were based on [the plaintiff's] race in light of the 'obvious alternative explanation' that [the defendant's] actions were based on its perception of [the plaintiff's] poor performance").

Ms. Aly references her national origin throughout her Complaint, alleging several ways in which her managers treated her differently than her American-born colleagues. Ms. Aly claims that her supervisor ignored her requests for help while responding to requests for help from peers

who were not foreign-born, ECF No. 1, at ¶ 11; assigned Ms. Aly a larger workload with higher expectations than her peers who were not foreign-born, *id.* at ¶¶ 14, 32; treated Ms. Aly more harshly than her American-born coworkers, *id.* at ¶¶ 21–22; refused Ms. Aly's requests to transfer supervisors while approving similar requests from American-born employees, *id.* at ¶ 35; and permitted one of Ms. Aly's American-born coworkers to maintain certain hours that they did not permit Ms. Aly to maintain, *id.* at ¶¶ 52–53.  Ms. Aly also alleges that the Department subjected her foreign-born colleague, Mr. Mizzo, to treatment similar to that which Ms. Aly experienced. *Id.* at ¶ 42.

These allegations, which set forth numerous times that Ms. Aly's supervisors treated her differently than her American-born colleagues, allow the court to plausibly infer that the hostility Ms. Aly experienced was national origin-based.  *See Winston*, 2018 WL 5786130, at *8 ("the consistent differential treatment between [plaintiff] and her Caucasian colleagues, without any legitimate explanation, suggests it was race-based hostility"); *Lee*, 2018 WL 3439261, at *10 (drawing a reasonable inference of racial motivation where the plaintiff did not plead "direct evidence of racial animus, such as anyone making overtly racially derogatory comments to her" but did allege that her supervisor "consistently treated white employees more favorably").  Though this Court has stated that "without evidence of racial epithets, hostile work environment claims will likely fail," *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 529–30 (D. Md. 2015), "[w]here there is no direct evidence that the complained of conduct was based on . . . animosity, a plaintiff may show that she was treated differently than similarly situated employees on the basis of . . . national origin." *Lauture v. St. Agnes Hosp.*, No. CCB-08-943, 2009 WL 5166253, at *7 (D. Md. Dec. 29, 2009) (citing *Gilliam*, 474 F.3d at 143).  Thus, Ms. Aly has plausibly alleged the second element of her hostile work environment claim.

### B.  Severe or Pervasive

Defendants also argue that Ms. Aly has not alleged that the harassment she experienced was sufficiently severe or pervasive as to give rise to a hostile work environment claim.  ECF No. 14–16.  "The 'severe or pervasive' element of a hostile work environment claim 'has both subjective and objective components.'"  *Equal Emp. Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003)).   A plaintiff must show not only that they "subjectively perceive[d] the environment to be abusive," *id.* (alteration in original) (quoting *Harris*, 510 U.S. at 21–22), but also "that 'a reasonable person in the plaintiff's position' would have found the environment objectively hostile or abusive."  *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998)).  The United States Court of Appeals for the Fourth Circuit has instructed that courts "must look at all the circumstances to determine whether a work environment is hostile or abusive . . . ."  *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 193 (4th Cir. 2000).  The factors courts consider include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted."  *Id.*  The determination "is not, and by its nature cannot be, a mathematically precise test."  *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 22). "[N]o single factor is dispositive, as [t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."  *Sunbelt Rentals, Inc.*, 521 F.3d at 315 (quoting *Harris*, 510 U.S. at 23; *Oncale*, 523 U.S. at 81–82) (internal citations omitted).  However, "plaintiffs must clear a high bar in order to satisfy the severe or

27

pervasive test." *Id.* "[C]omplaints premised on nothing more than 'rude treatment by [coworkers],' 'callous behavior by [one's] superiors,' or 'a routine difference of opinion and personality conflict with [one's] supervisor' are not actionable under Title VII." *Id.* (alterations in original) (internal citations omitted).

Ms. Aly has failed to allege facts sufficient for the court to plausibly infer that the alleged conduct was sufficiently severe or pervasive so as to alter the terms of her employment or create an abusive working environment.  Ms. Aly alleges that the harassment she experienced included "being humiliated, receiving reduced performance ratings, being disciplined, and being deprived of employment opportunities."  ECF No. 1, at ¶ 109.  The majority of Ms. Aly's allegations are general statements and do not describe particular incidents of conduct.  These general allegations are insufficient to state a claim for a hostile work environment because "general allegations" devoid of "specific dates, times or circumstances . . . do not suffice to establish an actionable claim of harassment."  *Carter v. Ball*, 33 F.3d 450, 461–62 (4th Cir. 1994).  The specific examples of conduct that Ms. Aly alleges that may allude to a hostile work environment are: (1) an email in which Mr. Liebrand stated he would give Ms. Aly a break from serving coffee to management if she answered a question; (2) an email Mr. Liebrand sent to Ms. Aly stating that she was not following Mr. Liebrand's protocol and was performing her work incorrectly; (3) an email that Mr. Liebrand sent to Ms. Aly, along with several other employees, demanding that Ms. Aly follow his instructions; and (4) Ms. Chen yelling at Ms. Aly and her colleague during a meeting and stating that she did not need to listen to Ms. Aly because of Ms. Chen's high ranking in the department. *Id.* at ¶¶ 15, 36, 46, 51.  These events took place over the course of approximately eight months. *See id.* (the above-listed instances occurring between December 2019 and July 2021).

These incidents, taken as true, are not sufficiently severe or pervasive to constitute a hostile work environment.  Two of these specific instances of conduct, in addition to many of Ms. Aly's more general allegations, involve Ms. Aly's managers' criticism of her job performance. Generally, conduct that involves a supervisor's provision of negative feedback to an employee is "sometimes necessary in a workplace and do[es] not constitute the kind of conduct that would underlie a hostile work environment."  *Decoster v. Becerra*, No. TDC-21-2195, 2022 WL 3083343, at *3 (D. Md. Aug. 3, 2022) (holding that the plaintiff did not plausibly state a claim for a hostile work environment where the plaintiff alleged that her employer "singl[ed her] out in front of her colleagues and peers and accused her of failing in her position," threatened to fire her, and placed her on an improvement plan); *Graham v. Prince George's Cnty.*, 191 F. App'x 202, 204– 05 (4th Cir. 2006) (affirming district court's finding that "reprimands from [the supervisor] regarding [the plaintiff's] performance and the harsh way in which [the supervisor] communicated" were insufficient to allege sufficiently severe or pervasive harassment).  The other occurrences, which involved Ms. Aly's managers yelling and sending an insulting email, are more accurately characterized as "rude treatment" or "callous behavior by [one's] superiors," neither of which are actionable under Title VII.  *Sunbelt Rentals, Inc.*, 521 F.3d at 315–16 (alteration in original) (citing *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).  *See also Onwudiwe v. Becerra*, No. TDC- 21-1620, 2023 WL 5338156, at *11 (D. Md. Aug. 18, 2023) (dismissing hostile work environment claim where the plaintiff alleged, among other complaints, that her employer yelled at her in an angry tone on one occasion, sent her a "harassing and fear inducing email," and criticized her performance).  Further, the acts Ms. Aly alleges, four instances of conduct over the course of eight months, were too infrequent to constitute pervasive harassment given the nature of the incidents.

*See, e.g.*, *Finnegan v. Dep't of Pub. Safety & Corr. Servs.*, 184 F. Supp. 2d 457, 462–63 (D. Md. 2002) (dismissing hostile work environment claim where the plaintiff "allege[d] that she was verbally abused for several months, [but] offer[ed] few specific examples" and stating that the incidents the plaintiff did allege were infrequent); *Mitchell v. Booz Allen Hamilton Inc.*, No. 23-cv-653-PGT, 2024 WL 993872, at *5 (E.D. Va. Mar. 7, 2024) (finding that seven similar instances of allegedly hostile behavior over the course of seven months was not sufficiently frequent to support a hostile work environment claim); *Hamel v. Bd. of Educ. of Harford Cnty.*, No. JKB-16-2876, 2018 WL 1453335, at *10 (D. Md. Mar. 23, 2018) (stating that the Defendant's conduct was too infrequent to pass the severe or pervasive test, and specifically was "a far cry from the *daily*, debilitating harassment other courts in this Circuit have found pervasive" (emphasis in original)).

Courts in this Circuit have frequently found that plaintiffs alleging conduct similar to that which Ms. Aly alleges have failed to meet the high "severe or pervasive" bar to support a hostile work environment claim.  For example, in *Buchhagen v. ICF Intern., Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013), the Fourth Circuit explained that the plaintiff's allegations that her employer yelled at her during meetings, consistently criticized her, and played favorites fell "far short of being severe or pervasive enough to establish an abusive environment . . . ."  Accordingly, the Court affirmed the district court's dismissal of the plaintiff's hostile work environment claim.  *Id.* Similarly, in *Jones v. Eli Lilly & Co.*, No. GJH-20-3564, 2021 WL 4502810, at *8 (D. Md. Sept. 30, 2021), this Court dismissed a plaintiff's hostile work environment claim that was based on allegations that the plaintiff's employer held Black employees to a higher standard than others, falsely accused the plaintiff of inadequate job performance, and frequently placed the plaintiff on PIPs and threatened termination.  Thus, while Ms. Aly has alleged a number of incidents that she perceived as hostile, she has "alleged no incidents of physically threatening conduct, abusive

30

communications, or discriminatory intimidation, ridicule, and insult that characterizes a[n objectively] hostile work environment." *Stovall v. H&S Bakery*, No. TDC-20-3234, 2021 WL 2580746, at *6 (D. Md. June 23, 2021) (citing *Boyer-Liberto*, 786 F.3d at 277). Accordingly, the Court grants Defendants' Motion as to Ms. Aly's hostile work environment claim.

## IV.   Ms. Aly's Constructive Discharge Claim

Finally, Ms. Aly advances a constructive discharge claim against Defendants, alleging that Defendants' conduct forced her to retire. ECF No. 1, at 14–15. "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that [their] 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). "A claim of constructive discharge . . . has two basic elements:" (1) that the plaintiff "was discriminated against by [their] employer to the point where a reasonable person in [their] position would have felt compelled to resign;" and (2) that the plaintiff actually resigned. *Id.* (citing *Pa. State Police*, 542 U.S. at 148). "[T]he level of intolerability required to state a claim of constructive discharge is higher than the showing required for a hostile work environment claim." *U.S. Equal Emp. Opportunity Comm'n v. Golden Ent., Inc.*, No. LKG-20-2811, 2023 WL 4134696, at *6 (D. Md. June 22, 2023) (citing *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019)). *See also Evans*, 936 F.3d at 193 (holding that, to support a constructive discharge claim based on a hostile work environment, a "plaintiff must show 'something more' than the showing required for a hostile work environment claim" (quoting *Pa. State Police*, 542 U.S. at 147)); *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 783 (D. Md. 2010) ("The 'severe and pervasive' standard required to state a hostile work environment claim is lower than the 'intolerability' standard required for a constructive discharge

claim"). Additionally, the Fourth Circuit requires that plaintiffs asserting constructive discharge claims "demonstrate the employer's intent to force the employee to quit." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1356 (4th Cir. 1995). In assessing this requirement, however, there need not be "'smoking gun' evidence of employer intent." *Id.* at 1354 (quoting Sheila Finnegan, Comment, *Constructive Discharge Under Title VII and the ADEA*, 53 U.Chi.L.Rev. 561, 568 (1986)). "[A]n employer 'must necessarily be held to intend the reasonably foreseeable consequences of its actions.'" *Id.* at 1355 (quoting *Troutt v. Charcoal Steak House, Inc.*, 835 F. Supp. 899, 902 n. 4 (W.D. Va. 1993)).

For the same reasons that Ms. Aly's allegations failed to sufficiently plead her hostile work environment claim, she similarly fails to state a claim for constructive discharge. *See Short v. Berryhill*, No. ELH-18-2714, 2019 WL 4643806, at *21 (D. Md. Sept. 24, 2019) ("Because these same allegations fail to allege a plausible hostile work environment claim, they *ipso facto* cannot support plaintiff's claim for constructive discharge" (citing *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018)). Even considered on their own, Ms. Aly's allegations are not what courts have classified as objectively intolerable. As discussed, Ms. Aly's allegations center on her employer's unreasonable expectations, criticisms of her work performance, and the manner in which her supervisors interacted with her. However, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (alteration in original) (quoting *Carter*, 33 F.3d at 459).

Courts have held that, in addition to constructive discharge claims that result from hostile work environments, "plaintiffs can instead establish a constructive discharge claim by showing

that, without regard to the hostility of the work environment, the employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the employee resigns." *Hodge v. Walrus Oyster Ale House*, No. TDC-18-3845, 2019 WL 6069114, at *8 (D. Md. Nov. 15, 2019) (internal quotation marks omitted).   Under this alternative theory, an environment may be objectively intolerable where the "employer makes clear to an employee [that] her termination was imminent and that 'the axe was about to fall . . . .'" *Decoster*, 2022 WL 3083343, at *4 (quoting *Equal Emp. Opportunity Comm'n v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002)).

Ms. Aly's constructive discharge claim fares no better under this alternate theory.   While she alleges that on one specific occasion, Ms. Chen threatened to remove Ms. Aly from federal service, ECF No. 1, at ¶ 54, this does not create a plausible inference that Ms. Aly's termination was clear and imminent.   The same day that Ms. Chen allegedly threatened to terminate Ms. Aly, Ms. Chen placed Ms. Aly on the PIP, a tool designed to improve an employee's allegedly deficient performance.   *See Decoster*, 2022 WL 3083343, at *5 (dismissing constructive discharge claim because placement on an Opportunity to Demonstrate Acceptable Performance ("ODAP") Plan was part of a "months-long process that may or may not have resulted in" the plaintiff's discharge). Further, Ms. Aly's complaint itself alleges that she had no choice but to leave her employment because of the "unbearable, hostile workplace environment," ECF No. 1, at ¶ 117, confirming that Ms. Aly's constructive discharge claim is based on her perception of a hostile work environment and not on her perception that her termination was imminent.   For the above reasons, the Court will grant Defendants' Motion with respect to Ms. Aly's constructive discharge claim.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion is GRANTED, in part, and DENIED, in part.  Defendants' Motion is granted without prejudice as to counts I, II, IV, and V.  Defendants' Motion is denied as to count III.  Plaintiff is granted leave to file, within 30 days of entry of this order, an Amended Complaint setting out in appropriate detail her discrimination, hostile work environment, and constructive discharge claims.

So ordered.

Date: May 9, 2024

_____/s/_____
Ajmel A. Quereshi
U.S. Magistrate Judge